UNITED STATES DISTRICT COURT
WESTERN DISTRICT COURT – ALEXANDRIA DIVISION

| | | |
|---|---|---|
| KENNY ADAMS | * | CIVIL ACTION NO.: |
| | * | |
| v. | * | JUDGE |
| WARDEN KEITH DEVILLE; | * | |
| MEDICAL DIRECTOR R.N. PRICE; | * | MAGISTRATE JUDGE |
| N.P. KATHLEEN RICHARDSON; and | | |
| DR. RAYMOND SIGNH | * | |

**COMPLAINT FOR DAMAGES/REFUSED TO PROVIDE MEDICAL TREATMENT FOR EARACHE, TUMOR/LOSS OF HEARING**

NOW INTO COURT, through undersigned counsel, comes the Plaintiff, KENNY ADAMS who respectfully represents that he has sustained compensable damages from being denied medical treatment, access to a medical doctor and treatment prescribed by a medical doctor and/or by the acts and omissions of Defendant(s) herein, or for which Defendant(s) is legally responsible, as follows:

1.

Jurisdiction

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1331 "Federal Question" accordingly Plaintiffs specifically seek relief pursuant to 28 USC § 1983 and the Constitution of the United States for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims.

2.

EXHAUSTION

To the extent any administrative remedy may be required, the Plaintiff exhausted same through 2nd step on June 26, 2017, through WNC-BJG-17-185.

3.

Venue

Venue is proper pursuant to 28 USC § 1391 (b)(1)(2) in that the defendant, resides in Winn Parish and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

4.

## PARTIES

PLAINTIFF:

The named plaintiff is:

1)    KENNY ADAMS DOC #336245, a major of full legal capacity, presently domiciled in Winn Correctional Center and who during all material times herein was a DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS inmate housed at the WINN CORRECTIONAL CENTER owned and/or operated by LaSalle Corrections and/or the Louisiana Department of Corrections..

5.

## DEFENDANTS

1)    **WARDEN KEITH DEVILLE**, a major and resident of the State of Louisiana, and an employee of WINN CORRECTIONAL CENTER and/or LaSalle Corrections, and amendable to personal service at 560 Gum Springs Rd., Winnfield, Louisiana 71483 in his individual capacity and on any employee of suitable age and discernment in his official capacity at the same address.

2)    **MEDICAL DIRECTOR R.N. PRICE**, a major and resident of the State of Louisiana, and an employee of WINN CORRECTIONAL CENTER and/or LaSalle Corrections, and amendable to personal service at WINN CORRECTIONAL CENTER (RIVER), located at 560 Gum Springs Rd., Winnfield, Louisiana 71483 in her individual capacity and on any employee of suitable age and discernment in her official capacity at the same address.

3)    **N.P. KATHLEEN RICHARDSON**, a major and resident of the State of Louisiana, and an employee of WINN CORRECTIONAL CENTER and/or LaSalle Corrections, and amendable to personal service at WINN CORRECTIONAL CENTER (WCC), located at  560 Gum Springs Rd., Winnfield, Louisiana 71483 in her individual

2

capacity and on any employee of suitable age and discernment in her official capacity at the same address.

4)    **DOCTOR RAMAN SINGH**, a major and resident of the State of Louisiana, and an employee of and medical director of the LOUISIANA DEPARTMENT OF CORRECTIONS, and amendable to personal service at Department of Public Safety and Corrections, 504 Mayflower Street, Baton Rouge, Louisiana 70802 in his individual capacity and on any employee of suitable age and discernment in his official capacity at the same address.

6.

GENERAL ALLEGATIONS OF FACT

The incident occurred on the WINN CORRECTIONAL CENTER property.

7.

On December 7, 2015, KENNY ADAMS was a DOC inmate who was transferred to WCC for housing at which time on intake he had no problem with either ear.

8.

On December 7, 2015, and during all material times hereafter each of the Defendants were under color of state law an acting in the course and scope of their employment with LaSalle Correctional and/or the Department of Corrections.

9.

On or about February 2, 2016, KENNY ADAMS appeared at the infirmary after making an emergency sick call for an earache and drainage.  He received medical attention from N.P. Richardson in the form of Debrox Wax Remover eardrops and Ibuprofen.  Whether the nurse was following a standing order is unknown at this time. KENNY ADAMS was not allowed to see a doctor.

10.

On May 18, 2016, KENNY ADAMS had to make a second sick-call for the same

earache, bu this time the right ear had a foul odor and was draining.  KENNY ADAMS was prescribed pain and allergy medications.  KENNY ADAMS was not allowed to see a doctor.

11.

On June 16, 2016, KENNY ADAMS made the third sick-call on the same earache. KENNY ADAMS was not allowed to see a doctor.

12.

For the next several months, KENNY ADAMS issued complaints against the medical department in response to which he received threats from correctional officers.  KENNY ADAMS was not allowed to see a doctor.

13.

On December 21, 2016, the pain was extreme and KENNY ADAMS was asking to see a doctor.  The pain, odor an discharge continued.  By this time, KENNY ADAMS began to experience a constant ringing in his right ear.  KENNY ADAMS was not allowed to see a doctor.  N..P. KATHLEEN RICHARDSON issued a prescription for Acetic Acid 2% Otic. It is unknown at this time if she was following a standing order issued by a physician.

14.

On January 17, 2017, KENNY ADAMS made a sick call at 8:00 a.m. and was seen by Ms. Jones, Ms. Fobbs, who is no longer employed with WCC, and N.P. Richardson. This was the fifth sick call for the same persistent medical issues that had been progressing since February 2, 2016. N.P.  Richardson finally referred KENNY ADAMS to an ENT physician. N.P KATHLEEN RICHARDSON issued a prescription for Cipro HC Otic drops.  It is unknown at this time if she was following a standing order issued by a physician.

15.

At this point in time, a year had passed and KENNY ADAMS had not been allowed to see a doctor for a persistent ear infection, which odor, loss of hearing and serious pain.

4

16.

Over a month passed before the transport to the doctor was arranged.  On February 24, 2017, KENNY ADAMS was transported to LSU Medical, where he was checked.  At that time the swelling and pain were so great, the ENT could not diagnose the problem.

17.

The LSU ENT physician prescribed Ofloxacin Ophthalmic Solution, USP eardrops for five (5)  days to reduce the extreme swelling inside the right ear and that he return so that the examination could be performed.

18.

On February 27, 2017, Nurse Practitioner Kathleen Richardson issued a prescription for Ofloxacin to be issued for seven days with no refills.

19.

On March 9, 2017, Nurse Practitioner Kathleen Richardson issued a prescription for Ofloxacin.3% Otic drops.  It is unknown if the nurse was acting on standing orders issued by a physician.

20.

The Defendants did not dispense any eardrops until March 9, 2017.  The failure to timely dispense the ear drops caused the delay of the follow up visit with the ENT back to March 17, 2017.

21.

More than a month passed before the Defendants allowed KENNY ADAMS to return.  On March 17, 2017, KENNY ADAMS was transported back to LSU medical.

22.

Again, due to swelling and pain, the ENT could not properly assess the ear.  The ENT ordered that he use grease and cotton balls in the right ear when showering to prevent water from entering the ear canal.  The LSU ENT scheduled both a CAT Scan and

an MRI on the right ear.

23.

On April 3, 2017, only the CAT Scan was performed on KENNY ADAMS. It is unclear why the MRI was not approved by the Defendants.

24.

On April 7, 2017, KENNY ADAMS was transported to LSU where he returned to the ENT, who reviewed the results of the diagnostic testing, which showed a Cholesteatoma an Osteoma, or bone tumor growing inside th right ear canal that was causing severe pain, blockage, infection and loss of hearing. The bone was bound to be badly infected causing severe pain, blockage, and loss of hearing. The ENT scheduled the surgery between April 7 and April 28, 2017, to remove the tumor to allow the ear to drain so that the infection could be properly treated.

25.

According to the American Academy of Otolaryngology, a cholesteatoma is a serious medical condition that requires treated-

> An abnormal skin growth in the middle ear behind the eardrum is called cholesteatoma. Repeated infections and/or a tear or pulling inward of the eardrum can allow skin into the middle ear. Cholesteatomas often develop as cysts or pouches that shed layers of old skin, which build up inside the middle ear. Over time, the cholesteatoma can increase in size and destroy the surrounding delicate bones of the middle ear leading to hearing loss that surgery can often improve. Permanent hearing loss, dizziness, and facial muscle paralysis are rare, but can result from continued cholesteatoma growth.
>
> Cholesteatoma is a serious but treatable ear condition, which can be diagnosed only by medical examination. Bone erosion can cause the infection to spread into the surrounding areas, including the inner ear and brain. If untreated, deafness, brain abscess, meningitis, and, rarely, death can occur

26.

April 28, 2017, came and went. Defendants failed to schedule the surgery.

27.

By May 21, 2017, Dr. Singh, the Medical Director and Warden had not approve the surgery and it was explained to KENNY ADAMS that the Medical Director of DOC, who is Dr. Raman Singh, had not approved the procedure and that he had determined that additional hearing test was warranted.  KENNY ADAMS was experiencing constant pain, dizziness, loss of equilibrium, deafness and odorous drainage.

28.

KENNY ADAMS continued to be told that the DOC medical had not cleared the surgery.

29.

Written policy of the DOC is that an employee may not substitute its medical opinion for that of the treating physician.  Decisions on health care may not be based on finances.

30.

Dr. Raman Singh was not a treating physician; yet, he was denying the medical procedure ordered by the treating physician based on finances and in deliberate indifference to a serious medical condition and need for immediate medical care.

31.

On June 2, 2017, Medical Director R.N. Price told KENNY ADAMS that DOC, which is Dr. Raman Singh, would not approve the surgery and that DOC wanted to conduct a hearing test that was to happen in a couple of weeks.  The delay in the hearing test demonstrates deliberate indifference to a serious medical condition,

32.

When KENNY ADAMS asked Medical Director R.N. Price to see a doctor, Medical Director R.N. Price advised KENNY ADAMS that Nurse Practitioner Kathleen Richardson was the doctor at Winn Correctional Center.  By June 2 2017, KENNY ADAMS was very concerned and suffering, because LSU medical had told Winn Correctional center that the

surgery was necessary.

33.

On June 2, 2017, KENNY ADAMS went back to medical and was seen by Medical Director R.N. Price and told they would set up a hearing test in a couple of weeks.  Medical Director R.N. Price told KENNY ADAMS that his surgery was on hold until he takes the hearing test; yet, Defendants would not schedule a hearing test.

34.

By June 12, 2107, Dr. Raman Singh still had not cleared the surgery.  By this time KENNY ADAMS ear was continue to reek of a bad odor, dense bloody drainage, the ear was in constant pain, he heard constant ringing and he had a full loss of hearing.  He was administered Ibuprofen and sinus pills.

35.

It is unclear why Dr. Raman Singh wanted another hearing test where the CAT Scan confirmed an osteoma with infection in the bone.  By this time, KENNY ADAMS was already unable to hear out of the right ear. So, it was unclear which result - lack or hearing or ability to hear - would result in Dr. Singh approving the surgery.  The hearing test appeared to be a dilatory tactic and deliberate indifference as failure to treat a cholesteatoma may lead to a brain infection, meningitis and, in rare cases, death.

36.

The repeat hearing test was scheduled on June 16-17, 2017, but deferred until June 29, 2017, and, again, deferred until June 30, 2017.

37.

On June 30, 2017, the hearing test revealed a complete loss of hearing in the right ear.  Apparently, in view of the loss of hearing and despite the raging infection. Dr. Singh determined that since KENNY ADAMS had already suffered a loss of hearing, the infection should not be treated.

8

38.

The surgery still has not been set.

39.

On August 3, 207, KENNY ADAMS was allowed a follow-up visit with LSU and again the ENT stated that surgery was necessary. The LSU ENT ordered medication and another MRI to check the tumor called a cholesteatoma and referred KENNY ADAMS to another doctor to review his high blood pressure so that it could be controlled prior to surgery.

40.

The LSU ENTs advised that due to the extensive delay in treatment the surgery will be much more involved and that it is too late for his hearing. KENNY ADAMS is now experiencing high blood pressure and blood in his stool. PA RICHARDSON advised the she was not concerned with the blood, because in her opinion it is probably due to hemorrhoids. KENNY ADAMS has never been diagnosed with hemorrhoids.

41.

Defendant(s) disregarded all rules and regulation in place to protect an inmate's health, which demonstrates a callous disregard for health and safety.

42.

Louisiana Administrative Code Title 22, Part III, § 2909, entitled *Medical and Health Care* provides as follows:

A. A licensed physician shall be responsible for the health care program and for the practice of medicine in the institution, and no restrictions shall be placed on the medical judgment of the physician.

B. All health care shall be provided in accordance with written policies and procedures developed by the physician in charge and endorsed by the administrator.

C. Treatment given by other than a licensed physician shall be made by trained personnel

according to written, standing or direct orders of the physician in charge.

D.  Inmates shall have continuous access to emergency health care by trained personnel and professional medical attention whenever required.

E.  Inmates shall have access to routine health care by a physician within 48 hours after making such request.

F.  Inmates shall be able to report illness or health complaints daily and all reports shall be recorded together with complaint disposition.

43.

DOC Health Care Policy HC-05 "Infirmary Care" provides that "B. A physician on call or available 24 hours a day;"

44.

DOC Health Care Policy HC-17 "Pharmaceuticals" provides that "F. Prescriptions shall be filed and medications dispensed, distributed and administered in a timely manner and according to the licensed prescriber's orders."

45.

DOC Health Care Policy HC-21 "Nursing Service" provides that "J. Medications shall be administered to offenders or delivered to them for self administration in accordance with state laws, practice, rulings and departmental regulations."

46.

DOC Health Care Policy HC-27 "Segregation" provides that "F. Offenders in segregation may request and receive medical attention as outlines Health Care Policy No. HC-01 'Access to care and Clinical Services.'"

47.

La. Admin Code Title 22, Part III, § 2909 (A) "A licensed physician shall be responsible for health care program and for the practice of medicine in the institution, and no restrictions shall be placed on the medical judgment of the physician."; D. "Treatment

given by other than a licensed physician shall be made by trained personnel according to written, standing or direct orders of the physician in charge."; F. "Inmates shall have continuous access to emergency health care by a physician within 48 hours after making such request."

48.

Basic Jail Guidelines State Offenders Housed in Local Jail Facilities, (December 2011) IV-C-001 and C-003 requiring over view by a physician and the presence of trained and licensed persons was violated.  .

49.

Warden Keith Deville was substantially certain that if a medically trained individual was not available to care for KENNY ADAMS or to follow up on the orders and administer prescriptions and treatment ordered by the treating physician would cause serious injury or death or permanent injury could result.

50.

This denial of medical treatment caused serious injury and suffering.

51.

Warden Keith Deville is the custodian of inmates housed at the WINN CORRECTIONAL Center.  La. R.S. 15:704.  There was no person trained or accredited in medical care on duty at the WCC while KENNY ADAMS sought to suffering serious infection and a tumor in his ear, particularly here, where the staff and DOC was disregarding and over riding the orders of a medical specialist from LSU ENT.

52.

Warden Keith Deville controls the daily operations of the jail and its employees.  In doing so, Warden Keith Deville failed to train or supervise the officers involved in the medical care. His medical decisions were based on finances. This lack of training and supervision constituted deliberate indifference, which resulted in serious personal injury.

53.

Failing to have medical personnel and/or a doctor available at the WINN CORRECTIONAL Center is a constitutionally deficient policy or custom.

54.

In the alternative, if a doctor was available at WINN CORRECTIONAL, KENNY ADAMS had no avenue to seek medical attention from that doctor due to defective policy and/or custom.

55.

The following claims for relief are pled collectively and in the alternative.

56.

**FIRST CLAIM FOR RELIEF**

**SECTION 1983 VIOLATION OF CIVIL RIGHTS**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

Under the color of State and local law, Defendant(s) violated the Plaintiff's 8th Amendment right against cruel and unusual punishment and to be free from to be free from use of corporal punishment, unnecessary and/or excessive force while being seized and/or detained by the Defendants.  Defendant(s) have exceeded constitutional limitations by denying medical treatment and/or failing to provide adequate treatment and access to medical facilities and a doctor in view of a serious medical condition.

57.

The conduct of the Defendant(s) was extreme and outrageous.

58.

Defendant(s) acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights and to a serous medical condition.

59.

The actions/inactions of the Defendant(s) has caused the Plaintiff severe emotional distress, mental anguish, severe and permanent humiliation, embarrassment, loss of enjoyment of life, past, present, and future medical expenses, together with such other damages as will be more fully shown at trial of this matter.

60.

Defendant(s) violated KENNY ADAMS'S 4th and/or 8th Amendment right as an inmate to be free from cruel and unusual punishment pursuant to 42 USC § 1983.  By denying medical treatment and/or to provide adequate treatment and access to medical facilities and a doctor and demonstrated a deliberate indifference to a serous medical need of an inmate committed to their care. Defendant(s) exceeded constitutional limitations that arose under circumstances that constitute an usual and recurring situation with which a guard must deal.  Failing to provide and blocking necessary medical procedures, which cause serious injury demonstrates a deliberate indifference to a serious medical need on the part of persons charged with the well being of inmates toward the inmate and there is a direct causal link between the constitutional deprivation and the suffering of KENNY ADAMS.

61.

## COSTS AND ATTORNEY FEES

Plaintiff seeks relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983 and the 28 USC § 2671 et seq. or any other applicable statute.

62.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

The failure to provide medical treatment and follow the treating physician's orders

described above was caused solely by the negligence of Defendant(s) in the following non-exclusive particulars, including but not limited to:

a.      Medical ignorance where the ear infection failed to respond to initial treatment.

b.      Medical ignorance in failing to recognize symptoms were more serious than a simple ear infection.

c.      Disregarding the medical orders of a specialist and treating physician while supplanting their own untrained medical opinions and treatment plan.

d.      Ignorance and/or failure to follow the rules and regulations in place to protect the health and safety of an inmate.

e.      Blocking and denying an inmate access to medical care.

f.      Practicing medicine without a license;

g.      Failure to obtain a doctor's order prior to or in the alternative  with holding medication prescribed by a specialist and surgeon.

h.      Failure to provide any safety precautions; and

i.      Inattentive and recklessness while housing and providing medical treatment to an inmate.

63.

**RES IPSA**

Plaintiff specifically pleads the doctrine of *res ipsa loquitur*.

64.

THIRD CLAIM FOR RELIEF

**RESPONDEAT SUPERIOR UNDER NEGLIGENCE**

To the extend the Warden is deemed to be an employer, an employer is liable pursuant to *respondeat superior* for the tortious acts committed against third parties by its employees during the course and scope of employment and while under its control,

14

direction and supervision pursuant to La. C.C. arts. 2317 and 2320.

65.

## DAMAGES

Plaintiff, itemizes his damages including but not limited to the following:

a.  Bodily injuries, pain and suffering - past, present and future;

b.  Mental anguish and distress - past, present and future;

c.  Medical and pharmaceutical expenses - past, present, and future;

d.  Apprehension of insufficient medical attention to injury;

e.  Permanent impairment and disability;

f.  Lost wages - future;

g.  Fear and fright; embarrassment, humiliation, and aggravation;

h.  Loss of ability to participate in normal activities; and

i.  Continual pain and suffering in an amount proper in the premise.

66.

## REQUEST FOR JURY TRIAL

Plaintiff prays for a jury trial on all issues.

WHEREFORE Plaintiff prays that Defendants be cited to appear and answer; that plaintiffs be properly noticed of all hearings, proceedings, orders, judgments and dates; and that, after due proceedings herein, the defendant(s) be cast in judgment unto Plaintiff for damages, cost, interest from date of demand, and attorney fees as may be allowed by law under any theory of law as expressly pled herein or as may be applicable to the facts pled herein or as they may develop and be presented during the trial of this matter.

Respectfully submitted:

s/Donna U. Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997