UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KENNY ADAMS | CIVIL CASE NO 17-1110 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WARDEN KEITH DEVILLE, R.N. PRICE, N.P. KATHLEEN RICHARDSON, DR. BRUCE FULLER, DR. PAMELA HEARN, DR. RAMAN SINGH, AND NURSE L. HAMILTON | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a Motion for Summary Judgment (Record Document 114) filed by Dr. Raman Singh, Dr. Bruce Fuller, Dr. Pamela Hearn, and Nurse Lavecya Hamilton ("the Defendants"). The Defendants seek dismissal of plaintiff Kenny Adams' ("Adams") remaining Eighth Amendment claims in which he alleges the Defendants were deliberately indifferent to his medical care needs while incarcerated in Winn Correctional Center ("WCC") and David Wade Correctional Center ("DWCC"). Adams opposes the Motion. See Record Document 122. Adams has also filed a Motion in Limine to exclude testimony regarding any past disciplinary reports or his prison record. See Record Document 124. For the reasons that follow, the Motion for Summary Judgment (Record Document 114) is **GRANTED** and the Motion in Limine (Record Document 124) is **DENIED AS MOOT**.

Presently, Adams is an inmate in DWCC under the custody of the Louisiana Department of Corrections ("DOC"). The Defendants are healthcare providers who are or were employees of the State of Louisiana and the DOC while Adams has been

1

incarcerated. In his Original Complaint, Adams named Dr. Singh as a defendant, arguing that while he was housed in WCC, Dr. Singh failed to approve payment for Adams' ear surgery. In his Amended Complaint, Adams adds Dr. Fuller, Dr. Hearn, and Nurse Hamilton who treated him while he has been housed in DWCC.[1] Adams specifically asserts that these Defendants at DWCC denied him the proper care and deliberately disregarded the recommendations and orders of the LSU Healthcare professionals with regards to Adams' medical treatment. Adams believes that the denial of care by the Defendants, despite being recommended by outside specialists, and the Defendants' overall indifference to his well-being violated his Eighth Amendment right to be free from cruel and unusual punishment. Adams brings his claims under title 42, section 1983 of the United States Code ("section 1983").

The Defendants filed the instant Motion for Summary Judgment arguing that there is an absence of evidence showing they acted with the requisite "deliberate indifference" to Adams' medical needs. The Defendants contend Adams' allegations are conclusory and do not fulfill his burden. See Record Document 144-1. Adams counters that the Defendants were deliberately indifferent to the point of violating his clearly established right because they wrongly deemed the procedures recommended for him to not be medically necessary.

## LAW AND ANALYSIS

The Eighth Amendment, in conjunction with section 1983, presents a cause of action in instances where prison officials exhibit deliberate indifference to the serious medical harm, or risk thereof, to prisoners. See Estelle v. Gamble, 429 U.S. 97, 104, 97

---

[1] Adams' claims against Dr. Singh remain unchanged from his Original Complaint. The Amended Complaint simply addresses Adams' treatments at DWCC after he was transferred there in January of 2018.

2

S.Ct. 285, 291 (1976). Such cause of action stems from the Eighth Amendment's imposed duty on prison officials "to ensure that inmates receive adequate medical care." Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994). To succeed in an Eighth Amendment claim, a plaintiff must first prove objectively that he was exposed to a substantial risk of serious harm. See id. Second, the plaintiff must show that the prison officials were "deliberately indifferent," meaning they were subjectively aware of such risk but consciously ignored it. Id.

Because it is clear that Adams was exposed to a serious risk of harm due to his worsening health conditions, fulfillment of the second prong is the only issue before the Court. Deliberate indifference requires a showing by Adams that the Defendants, "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Furthermore, the decision of whether to provide additional treatment equates to a "matter for medical judgment," not deliberate indifference. Id.

Adams contends Dr. Singh denied him necessary treatment when he failed to approve surgery though it was recommended by an ear, nose, and throat ("ENT") physician at LSU Health Sciences Center. Adams argues that Dr. Singh denied the surgery and requested Adams undergo another hearing test for "financial reasons." See Record Document 1. Similarly, Adams asserts that Dr. Fuller, Dr. Hearn, and Nurse

Hamilton, failed to comply with the dietary restrictions, medications, and treatments recommended by physicians at LSU Medical Center to his detriment. The Defendants' failure to act, Adams argues, was intentional and conscious to the point of punishment.[2]

The Defendants point to Adams's own testimony from May 2021 as proof that they provided adequate medical care and failed to act with the requisite deliberate indifference. In his deposition, Adams admits he never spoke to Dr. Singh, that Dr. Singh was not his treating physician, and he has never seen any documents showing that Dr. Singh denied his medical treatments. See Record Document 114-2 at 22. Adams also recounts the multiple visits he made to the medical unit after transferring to DWCC in 2018. According to Adams, the medical staff at DWCC, including Dr. Hearn, Dr. Fuller, and Nurse Hamilton, examined and prescribed numerous treatments for Adams including a colonoscopy, electrocardiograms, heart catheterization, echocardiograms, pulmonary function testing, imaging studies, and laboratory assessments to address his many ailments. See Record Document 114-2.  The Defendants largely rely on Adams's own statement that he did not know whether the Defendants were trying to punish him. See Record Document 114-2 at 55.

It is apparent that the Defendants were objectively aware of Adams's numerous medical conditions. The evidence shows that Adams made 25 sick calls to the medical units in both WCC and DWCC and received medical attention. See Record Document 122-17. Adams, in his deposition, explains that he received his first ear surgery in November 2017 after being referred to specialists by medical staff at WCC who all agreed

---

[2] The Court notes that Adams attaches to his opposition a number of complaints and what appear to be sick calls made by other inmates at DWCC. These attachments are in no way relevant or probative to the issue at hand and the Court declines to include them in its analysis.

4

the surgery was needed. He admits the surgery was delayed because his blood pressure was too high. See Record Document 114-4 at 1. After he was transferred to DWCC in January of 2018, Adams was placed on a low sodium diet at the recommendation of LSU physicians to control his blood pressure. See Record Document 114-2 at 28.

Dr. Hearn at DWCC referred him to receive a colonoscopy, CT scans, and an echocardiogram to treat his prostate issues, abdominal pains, and potential heart condition. Dr. Hearn also continued to permit Adams to visit outside specialists for his ear. His second ear surgery was scheduled for March 2019, but he again experienced uncontrolled hypertension which postponed the procedure. See Record Document 114-4 at 2. Adams was then referred by the defendant doctors at DWCC to the cardiology and pulmonary specialists for an electrocardiogram, heart catheterization, echocardiograms, pulmonary function testing, imaging studies, and laboratory assessments to ensure he was medically fit for surgery. Ultimately, Adams received his second surgery in September of 2019. See id.

What Adams lacks, however, is any evidence beyond mere conclusory statements of the Defendants' subjective intent to harm him. Even accepting Adams' own expert opinion made by Dr. George Edmond Smith that Adams received medical care "below the standards of good and proper care," this does not amount to a deliberate indifference to his medical needs. Record Document 114-3. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 105-06, 97 S.Ct. at 292. at 5. Even assuming that any or all the Defendants could be considered negligent,

their conduct still does not constitute a cognizable claim under the Eighth Amendment. <u>See id</u>.

For the foregoing reasons,

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment (Record Document 114) is **GRANTED**.

**IT IS FURTHER ORDERED** that Adams' remaining claims against Dr. Bruce Fuller, Dr. Pamela Hearn, Dr. Raman Singh, and Nurse Lavecya Hamilton are dismissed in their entirety.

**IT IS FURTHER ORDERED** that Adams' Motion in Limine (Record Document 124) is **DENIED AS MOOT**.

The Clerk of Court is ordered to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 3rd day of December, 2021.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT